T. K. RIDDICK V. NATHAN J. PARR, Appellant.

FRAUDULENT CONVEYANCE: *Proof of insolvency.* A judgment creditor is not entitled to set aside a conveyance by an insolvent judgment debtor, and to subject the land to the payment of the judgment, where it is not shown that other parties to the judgment are also insolvent.

*Relationship—Bona fide creditors.* In a suit to set aside a conveyance, as fraudulent, made by a son to his father, the relationship of the parties is proper to be considered, but not necessarily indicative of fraud; and the father, being a *bona fide* creditor, has a right to secure himself, though he knows that thereby the chances of other creditors to do so will be lessened, provided it is done in good faith.

*Appeal from Buena Vista District Court.*—HON. W. B. QUARTON, Judge.

SATURDAY, MAY 19, 1900.

PLAINTIFF, a judgment creditor of F. J. Parr, whom he alleges to be insolvent, brings this action in equity to set aside a deed executed by said F. J. Parr and his wife, Charlotte A. Parr, to the defendant Nathan J. Parr, conveying a certain section of land in Buena Vista county, and to subject said land to the payment of his

judgment. He alleges that said deed was executed without consideration, and for the purpose of defrauding, hindering, and delaying the creditors of F. J. Parr, and that the defendant Nathan J. Parr knew said facts. F. J. Parr and Charlotte A. Parr answered separately, disclaiming any interest in said land; and N. J. Parr answered, admitting that plaintiff holds a judgment as alleged, and denying every other allegation in the petition. Decree was rendered setting aside said deed, and charging the land with the balance due on plaintiff's judgment, "subject, however, to the right of said Nathan J. Parr to be subrogated to all the rights under the mortgage and tax lien discharged by him, and which were valid liens upon said premises prior to said pretended conveyances; and said sums so paid, amounting to eleven thousand six hundred and thirty-seven and 33-100 dollars, with interest, according to the terms of said mortgages, and six per cent. on the amount paid to discharge said taxes, and hereby declared to be a prior lien on said premises in favor of said Nathan J. Parr; and, subject to said lien in favor of said Nathan J. Parr, the said premises are hereby decreed to be subject to the lien of, and payment of, plaintiff's said judgment." From this decree the defendant Nathan J. Parr appeals.—*Reversed.*

*Mack & De Land* for appellant.

*A. D. Bailie* for appellee.

GIVEN, J.—I. It is a familiar rule of the law that, unless the judgment debtor is insolvent, the judgment creditor may not invoke the relief sought in this action. The petition shows that the plaintiff's judgment is "against F. J. Parr and others," and a "statement of facts admitted" shows that the judgment "was rendered upon three promissory notes of F. J. Parr and Charlotte A. Parr." It is alleged in the petition "that said F. J. Parr is insolvent and has no property subject to execution," and there is evidence tending to support this charge, but not of a conclusive character. Indeed, the fair inference from it is that F. J. Parr did have personal property subject to execution. We have seen that the judgment is against Charlotte A. Parr as well as F. J. Parr; yet there is neither allegation nor proof that Charlotte A. Parr was insolvent, or that she did not have property subject to execution. For aught that appears, she may have had ample property subject to execution to satisfy the balance due upon plaintiff's judgment. If it should be said that the plaintiff had established his allegation that F. J. Parr was insolvent, he certainly has failed to do so as to the other judgment debtor.

II. We think the plaintiff has failed to sustain his allegation of fraud and want of consideration in the deed sought to be

set aside. Nathan J. Parr is and was a resident of Illinois. In 1895 his son F. J. Parr visited Buena Vista county, and purchased the land in question; making a small payment thereon and further payments soon thereafter. F. J. Parr moved to Buena Vista county in 1896, and engaged in business, in the course of which he became indebted in considerable sums, including five thousand five hundred and sixty dollars to his father for borrowed money, and ten thousand eight hundred and eleven dollars secured by mortgage on the land in question. On the eighteenth of January, 1897, F. J. and Nathan J. Parr entered into a written contract whereby Nathan J. Parr purchased said section of land for the agreed consideration of twenty thousand dollars, which is conceded to be the reasonable value thereof, to be paid as follows: By assuming the mortgage on the land, to the amount of ten thousand eight hundred and eleven dollars and interest; to surrender to F. J. Parr his two promissory notes for five thousand five hundred and sixty dollars; the balance to be paid on delivery of the deed. The deed was afterwards executed and delivered, and was placed of record on the seventeenth day of February, 1897. The evidence shows, without reasonable ground for dispute, that said indebtedness of five thousand five hundred and sixty dollars from F. J. Parr to Nathan J. Parr was a *bona fide* indebtedness for money loaned. The evidence shows, without any conflict, that Nathan J. Parr paid the full amount of twenty thousand dollars as agreed, and that the surplus over and above the mortgage debt on the land and the five thousand five hundred and sixty dollars indebtedness of F. J. Parr was applied in payment of other debts of F. J. Parr. The evidence relied upon as showing the fraud alleged is that tending to show knowledge on the part of Nathan of his son's embarrassment, declarations of F. J. Parr as to what his father would do for him, and of the father as to what he would do for his son, and the fact that F. J. remained in control of the farm for a time. The relationship of the parties to the deed is proper to be considered, but not necessarily indicative of fraud. The father, being a bona fide creditor, had a right to secure himself, even though he knew that thereby the chances of other creditors to do so would be lessened, provided it was done in good faith. There is nothing in the statements of either Nathan or his son that shows any obligation or purpose on the part of Nathan to do otherwise than he did. While he knew that his son was embarrassed, and it was because of that embarrassment that he came to his assistance, he did not know the details or extent of his indebtedness, and, we think, believed that by taking the land he would not only save himself, but assist his son and his creditors, by avoiding delay. His desire to aid his son to pay his debts explains why he was left in control of the farm. He was left in control, that he might do just what he did do, namely, handle and

feed stock for the market, that he might pay what of his debts remained unsatisfied. We will not discuss the evidence in detail. It is sufficient to say that we think it fails to show any fraudulent intent upon the part of either of the parties to the deed, and that the consideration was full and complete, and the transaction in good faith, and without any purpose to hinder, delay, or defraud creditors. It follows from our conclusions that the decree must be reversed, and decree rendered dismissing plaintiff's petition.— REVERSED.